**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------
**GONZALEZ,**

              **Plaintiff,**             **16-cv-02611 (JGK)**

        **- v.-**               **MEMORANDUM OPINION**
                                  **AND ORDER**
**J.P. MORGAN CHASE BANK, N.A. ET AL,**

             **Defendants.**
-------------------------------------
**JOHN G. KOELTL, District Judge:**

    This action is the latest in a series of lawsuits that rely on a standard form complaint to assert various claims against, among others, mortgage loan servicers, underwriters, and trusts in connection with purported defects related to mortgage loan assignments. Complaints derived from the form complaint (or complaints that are coincidently similar to the form complaint) have not fared well in the United States District Courts for the Southern District of New York. See, e.g., Horton v. Wells Fargo Bank N.A., No. 16-CV-1737 (KBF), 2016 WL 6781250 (S.D.N.Y. Nov. 16, 2016); Harriot v. JP Morgan Chase Bank NA, No. 16 CIV. 211 (GBD), 2016 WL 6561407 (S.D.N.Y. Oct. 21, 2016); Nath v. JP Morgan Chase Bank, No. 15-CV-3937 (KMK), 2016 WL 5791193 (S.D.N.Y. Sept. 30, 2016); Springer v. U.S. Bank Nat'l Ass'n, No. 15-CV-1107(JGK), 2015 WL 9462083 (S.D.N.Y. Dec. 23, 2015); Le Bouteiller v. Bank of N.Y. Mellon, No. 14 CIV. 6013 PGG, 2015 WL 5334269 (S.D.N.Y. Sept. 11, 2015); Obal v. Deutsche Bank Nat.

Trust Co., No. 14 CIV. 2463, 2015 WL 631404 (S.D.N.Y. Feb. 13, 2015), aff'd, No. 15-775, 2016 WL 6518865 (2d Cir. Nov. 3, 2016) (summary order). The present complaint is no exception.

The plaintiff, Felipe Gonzalez, has asserted claims against the defendants, J.P. Morgan Chase Bank, N.A. ("Chase"); the Federal National Mortgage Association, As Trustee for Fannie Mae Guaranteed Remic Pass-Through Certificates Fannie Mae Remic Trust 2008-81 ("Fannie Mae"); Rushmore Loan Management Services, LLC ("Rushmore"); and various Does alleged to be "individuals or corporations that aided and abetted in the civil conspiracy to deny Plaintiff's due process." Am. Compl. ¶ 8. The defendants have moved to dismiss the Amended Complaint for want of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the plaintiff's federal claims under the Truth in Lending Act (the "TILA"), 15 U.S.C. § 1601 et seq., and supplemental

---

[1] The claims against the Does suffer from the same deficiencies as the claims against Chase, Fannie Mae, and Rushmore. The present motions to dismiss are thus treated as having been brought on behalf of the Does. See Springer, 2015 WL 9462083, at *2 n.1 (citing McCarty v. Bank of N.Y. Mellon, No. 14-cv-6756 (AT), 2015 WL 5821405, at *1 n.1 (S.D.N.Y. Sept. 8, 2015)).

2

jurisdiction pursuant to 28 U.S.C. § 1367 over the plaintiff's state law claims.[2]

For the following reasons, the defendants' motions to dismiss the Amended Complaint are **granted**.

**I.**

When presented with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and a motion to dismiss on other grounds, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

---

[2] The Amended Complaint also asserts jurisdiction pursuant to various other federal statutes, such as the "Securities Act of 33." See Am. Compl. ¶ 1. However, the Amended Complaint includes no causes of actions with respect to those statutes, nor allegations that could support such causes of actions, nor has the plaintiff argued in his papers that there is a basis for jurisdiction under those statutes. "Merely invoking the existence of some federal statute, without presenting facts or alleging a claim related to that statute, does not establish federal question jurisdiction." Harriot, 2016 WL 6561407, at *5 (quoting Chan Ah Wah v. HSBS Bank PLC, No. 13-CV-4789, 2014 WL 2453304, at *2 (S.D.N.Y. June 2, 2014)).

Relatedly, in their respective papers, the plaintiff, Chase, and Fannie Mae presume that the Court has jurisdiction pursuant to 28 U.S.C. § 1332, but the Amended Complaint does not allege diversity of citizenship as a basis for jurisdiction. Indeed, it does not appear that diversity could be a basis for jurisdiction in this action because the plaintiff and the defendant Rushmore both appear to be citizens of California. Am. Compl. ¶¶ 5-6; see Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998).

In defending against a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; see also Graubart v. Jazz Images-, Inc., No. 02-CV-4645 (KMK), 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek, 600 F.3d 171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by the body of decisional law that has developed under Rule 56 of the Federal Rules of Civil Procedure. Kamen, 791 F.2d at 1011; see also Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec., 811 F. Supp. 2d 803, 821-22 (S.D.N.Y. 2011).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a *pro se* complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests."[3] Chavis v. Chappius,

---

[3] Although the plaintiff is currently represented by counsel, see Dkt. 41, the plaintiff initially brought this action proceeding

618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Cooksey v. Digital, No. 14-CV-7146 (JGK), 2016 WL 5108199, at *2 (S.D.N.Y. Sept. 20, 2016).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The plaintiff's claims arise out of a mortgage loan in the sum of $387,750 (the "Mortgage Loan") that was originated by Chase, which the plaintiff used to refinance a property located in Van Nuys, California (the "Property"). Am. Compl. ¶ 9; Kossar

---

*pro se*. Because counsel was retained after the Amended Complaint and the opposition to the motions to dismiss were filed, the motions to dismiss are treated as if they are directed against the pleadings of a *pro se* litigant.

Decl., Ex. A (The Promissory Note). The plaintiff entered into the Mortgage Loan with Chase on July 20, 2007, and granted the deed of trust (the "Deed of Trust") for the Property to Chase, which was recorded by the Recorder's Office of Los Angeles County, California (the "Recorder's Office") on July 30, 2007. Am. Compl. ¶ 9; Scibetta Decl. ¶ 2; Scibetta Decl., Ex. 1 (The Deed of Trust). On February 16, 2009, Chase assigned the Deed of Trust to an affiliate, Chase Home Finance, LLC ("CHF"), which was recorded by the Recorder's Office on March 4, 2009. Am. Compl. ¶ 11; Scibetta Decl. ¶ 3; Scibetta Decl., Ex. 2 (The Assignment of the Deed of Trust to CHF). On October 6, 2010, CHF assigned the Deed of Trust to Fannie Mae, which was recorded by the Recorder's Office on October 8, 2010. Am. Compl. ¶ 9; Scibetta Decl. ¶ 4; Scibetta Decl., Ex. 3 (The Assignment of the Deed of Trust to Fannie Mae). The plaintiff alleges that he learned about purported defects associated with the latter two assignments on August 24, 2015, by conducting a certified forensic loan audit. Am. Compl. ¶¶ 11, 13; Compl., Ex. B (The Property Securitization Analysis Report).[4] Fannie Mae subsequently placed the Deed of Trust into a real estate mortgage investment trust, Fannie Mae Remic Trust 2008-81 (the

_____

[4] The plaintiff's exhibits are attached to the original Complaint.

7

"Trust"), for which Fannie Mae served as trustee. Am. Compl. ¶¶ 9-13.

The plaintiff raises a host of purported issues with respect to the assignments that he claims void those assignments, including that the assignments violated the applicable loan instruments underlying the Mortgage Loan (such as the Promissory Note and the Deed of Trust), the Pooling and Servicing Agreement (the "PSA") that governed the Trust, "New York trust law," "California Law," and other federal statutes. See Am. Compl. ¶¶ 11, 14, 20-21, 23-32, 34-37. The plaintiff alleges that another improper assignment of the Deed of Trust in violation of the PSA occurred on March 7, 2012. See Am. Compl. ¶ 27.

Meanwhile, on June 1, 2009, the plaintiff defaulted on the Mortgage Loan. Am. Compl. ¶ 9; Scibetta Decl., Ex. 5 (Notice of Default). Around 2010, the plaintiff alleges that he applied to Chase for a loan modification, an application Chase denied. Am. Compl. ¶ 9. The plaintiff remains in default on the Mortgage Loan, but has continued to make payments on the Mortgage Loan and remains in possession of the Property. Am. Compl. ¶ 9; see also Compl., Ex. A (Ltr. from Rushmore to the plaintiff). There is no allegation that the Property is the subject of a pending nonjudicial foreclosure action.

The plaintiff attributes the default to Chase's original decision to issue the Mortgage Loan to the plaintiff. Am. Compl. ¶ 17. The plaintiff alleges that, had Chase conducted proper due diligence on the plaintiff, Chase would have known that he did not qualify for the Mortgage Loan, which would have dissuaded Chase from issuing the Mortgage Loan to the plaintiff, who would have avoided the subsequent default. Am. Compl. ¶¶ 10, 17.

In August 2012, the plaintiff, represented by counsel, brought an action related to the denial of the plaintiff's application to modify the Mortgage Loan against, among other defendants, Chase and Fannie Mae in the Superior Court of the State of California, County of Los Angeles, asserting claims for breach of contract, promissory estoppel, negligent misrepresentation, fraud, and violation of the California Unfair Competition Law (the "California State Litigation"). See Gonzalez v. JPMorgan Chase, et al., Civil Case No. LC097089; Gonzalez v. JPMorgan Chase Bank, N.A., No. B252568, 2015 WL 778763, at *3-5 (Cal. Ct. App. Feb. 24, 2015) (unpublished opinion); Am. Compl. ¶ 9. The plaintiff's claims in the California State Litigation were based, in part, on allegations related to the assignments already discussed. See Gonzalez, 2015 WL 778763, at *2.

On January 16, 2013, the plaintiff brought another action also related to the Mortgage Loan against, among others, Chase

and Fannie Mae in the United States District Court for the
Central District of California asserting claims for violations
of the TILA, violations of the Real Estate Settlement Procedures
Act (the "RESPA"), "wrongful foreclosure in violation of public
policy," breach of contract, and breach of the covenant of good
faith and fair dealing (the "California Federal Litigation").
See Gonzalez v. J.P. Morgan Chase Bank aka J.P. Morgan Bank
N.A., et al., No. 13-cv-00319 (SJO) (C.D. Ca.); Am. Compl. ¶ 9;
Scibetta Decl., Ex. 7 (The Complaint in the California Federal
Litigation) at 1. The plaintiff's TILA claims were predicated on
the plaintiff's discovery that "another lender or servicer"
different from the "original lender" was "in charge of the
[Mortgage Loan]," and on the theory that the transfers of the
Promissory Note underlying the Mortgage Loan had violated 15
U.S.C. § 1641(g) of the TILA. Scibetta Decl., Ex. 7 at 10 ¶ 15,
11-12. On March 20, 2013, the plaintiff voluntarily dismissed
without prejudice the California Federal Litigation. Am. Compl.
¶ 9; Scibetta Decl., Ex. 8 (Notice of Voluntary Dismissal of the
California Federal Litigation).

    The California State Litigation continued. On September 12,
2013, the Superior Court of the State of California, County of
Los Angeles, dismissed the California State Litigation for
failure to state a claim. See Gonzalez, Civil Case No. LC097089.
The plaintiff appealed. While the appeal was pending, on January

19, 2015, Chase offered the plaintiff a settlement that would have modified favorably the terms of the Mortgage Loan. Am. Compl. ¶ 9. The plaintiff did not agree to the settlement, which the plaintiff attributes to the alleged incompetence of his counsel in the California State Litigation, who is not named as a party in this action. Am. Compl. ¶ 9.

On February 24, 2015, in an unpublished opinion, the California Court of Appeal, Second District, Division 5, affirmed the judgment dismissing the plaintiff's claims in the California State Litigation.[5] See Gonzalez, 2015 WL 778763, at *1. The court predicated its affirmance on the plaintiff's failure to show that he had suffered any injury or detriment as a result of the alleged conduct by Chase and Fannie Mae. See id. at *6-10.[6]

---

[5] The defendants do not argue that the plaintiff should be collaterally estopped from pursuing his claims in this Court.
[6] The unpublished decision in Gonzalez, 2015 WL 778763, at *2-3, references certain alleged efforts that Chase and Fannie Mae took between 2010 and 2013 to foreclose on the Property, which apparently culminated in a sham foreclosure sale that Chase caused to be rescinded. According to Gonzalez, the plaintiff never lost possession of the Property, and, indeed, suffered no injury or detriment as a result of any of the alleged acts. See id. at *6-10. The plaintiff does not base his present claims on the sham foreclosure discussed in Gonzalez; in fact, the Amended Complaint does not reference the sham foreclosure at all, and the plaintiff asserted in his opposition papers that this is a pre-foreclosure case. Pl.'s Mem. Op. at 4. Counsel for the plaintiff reiterated at oral argument on the present motions that the Amended Complaint is not based on any prior, pending, or imminent foreclosure action against the Property. See Transcript of Oral Argument at 11-12 (Oct. 17, 2016).

Around February 2016, Chase transferred its Mortgage Loan servicing responsibilities to Rushmore. Am. Compl. ¶ 6; Compl., Ex. A.

On April 7, 2016, the plaintiff commenced the present action in this Court, and, on July 26, 2016, filed the Amended Complaint.[7] The plaintiff has asserted five claims against the defendants in connection with purported defects in the assignments of the Mortgage Loan: First, declaratory judgment that the assignments of the Mortgage Loan are void in order to preclude any future attempts by the defendants to foreclose on the Property; second, fraud; third, unspecified violations of the TILA; fourth, slander of title; and fifth, violations of 15 U.S.C. § 1641(g) of the TILA. In addition, the plaintiff has brought a sixth claim for specific performance to enforce the terms of the proposed settlement agreement that was offered in the California State Litigation, but that the plaintiff did not

---

[7] On September 22, 2016, after the defendants filed their papers in support of their motions to dismiss and the plaintiff filed his papers in opposition, the plaintiff moved for leave to amend the Amended Complaint. See Dkt. 34. On October 17, 2016, at oral argument on the present motions, counsel for the plaintiff indicated that the plaintiff did not wish to amend the Amended Complaint prior to the decision on these motions. Accordingly, the motion to amend was denied on the record as moot, without prejudice to renewal.

accept, and a seventh claim for rescission of the Mortgage Loan pursuant to 15 U.S.C. § 1635 of the TILA.[8]

## III.

### A.

The plaintiff lacks standing to pursue the claim for declaratory judgment that the assignments are void.

Under the Declaratory Judgment Act (the "DJA"), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). A court's exercise of jurisdiction under the DJA is discretionary. See Dow Jones & Co. v. Harrods, Ltd., 346 F.3d 357, 359 (2d Cir. 2003) (per curiam); Bruce Winston Gem Corp. v. Harry Winston, Inc., No. 09-cv-7352 (JGK), 2010 WL 3629592, at *6 (S.D.N.Y. Sept. 16, 2010). However, the Court of Appeals for the Second Circuit has held that federal district courts must entertain declaratory judgment actions when the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" or "when it will terminate and afford relief from the uncertainty,

---

[8] In the Amended Complaint, the claims for specific performance and rescission are stated in the same cause of action, but are properly construed as the sixth and seventh claims, respectively.

insecurity, and controversy giving rise to the proceeding."
Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir.
1992) (citation omitted); see also Duane Reade, Inc. v. St. Paul
Fire and Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005);
Springer, 2015 WL 9462083, at *6.

     As with any action, Article III of the United States
Constitution limits the jurisdiction of federal courts to
"Cases" and "Controversies." Lujan v. Defenders of Wildlife, 504
U.S. 555, 559 (1992). To satisfy the requirements of Article III
standing, a plaintiff must show that (1) he has suffered an
actual or imminent injury in fact, which is concrete and
particularized; (2) there is a causal connection between the
injury and defendant's actions; and (3) it is likely that a
favorable decision in the case will redress the injury. Id. at
560-61. "The party invoking federal jurisdiction bears the
burden of establishing these elements." Id. at 561.

     Even if a plaintiff has constitutional standing, the
plaintiff must also satisfy prudential standing requirements.
The "prudential standing rule . . . normally bars litigants from
asserting the rights or legal interests of others in order to
obtain relief from injury to themselves." Warth v. Seldin, 422
U.S. 490, 509 (1975). "[T]he plaintiff generally must assert his
own legal rights and interests, and cannot rest his claim to

14

relief on the legal rights or interests of third parties." Id.
at 499

The claim for declaratory judgment is based upon purported
violations of the PSA, the Deed of Trust, the Promissory Note,
New York trust law, "California law," and a nonspecific morass
of federal statutes.[9] But, regardless of the violations, the
plaintiff has failed to establish how the allegedly defective
assignments or improper securitization of the Mortgage Loan

---

[9] The plaintiff alleges that the securitization of the Deed of
Trust violated "New York trust law," and that the Trust is
"organized and existing under the laws of New York." Am. Compl.
¶¶ 7, 15. The parties do not dispute that the PSA is governed by
New York law. The Court can treat the PSA as governed by New
York law in accordance with the implied consent of the parties.
See Cox v. Nationstar Mortg. LLC, No. 15CV9901(DLC), 2016 WL
3926467, at *3 n.4 (S.D.N.Y. July 18, 2016) (citing Chau v.
Lewis, 771 F.3d 118, 126 (2d Cir. 2014)).
      The positions of the parties are less clear with respect to
the governing law of the Promissory Note and the Deed of Trust.
The plaintiff argues that California law should govern his state
law claims. He asserts that the Property is located in
California and that the events underlying this suit occurred in
California, which implies that the Promissory Note and Deed of
Trust should be governed by California law. The defendants
respond that the Amended Complaint and the plaintiff's choice-
of-forum suggested to the defendants that they would only have
to confront issues related to New York law in this action. The
defendants do not otherwise challenge that the Deed of Trust and
Promissory Note are governed by California law. The Deed of
Trust provides that it is governed by the location of the
Property, see Scibetta Decl., Ex. 1 at 12 ¶ 16, namely,
California. Because the Deed of Trust specifies that it is
governed by the law of California, and the defendants do not
contest that either the Promissory Note or the Deed of Trust are
governed by California law, the Court will treat both loan
instruments as governed by California law. See Cox, 2016 WL
3926467, at *3 n.4; Horton, 2016 WL 6781250, at *3 & n.3.

15

could have injured the plaintiff in an actual, imminent, or concrete way. Moreover, the plaintiff lacks prudential standing to pursue his claims based on violations of the PSA and New York trust law because the plaintiff cannot establish that he is an intended beneficiary under the PSA or New York trust law. The Court of Appeals for the Second Circuit, and the United States District Courts for the Southern District of New York, have repeatedly rejected essentially identical claims for declaratory relief based on a plaintiff's alleged apprehension about potential foreclosure actions as too hypothetical, speculative, and abstract to support constitutional standing, and also as barred by considerations of prudential standing. See, e.g., Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 85-86 (2d Cir. 2014) (affirming dismissal of claims for declaratory judgment that the assignments of mortgages were invalid on the theory that they violated New York trust law and the governing documents of the mortgage trust into which they were placed for want of standing); Obal v. Deutsche Bank Nat'l Trust Co., No. 15-775, 2016 WL 6518865, at *1 (2d Cir. Nov. 3, 2016) (summary order) ("[The plaintiff] lacked both constitutional and prudential standing to challenge either the validity of the assignment of his mortgage loan or the assignment's compliance with laws, regulations, and the Trust's prospectus and pooling and servicing agreement."); Harriot, 2016 WL 6561407, at *5-6;

16

Springer, 2015 WL 9462083, at *3-6; Le Bouteiller, 2015 WL
5334269, at *4-8; see also Ocampo v. JPMorgan Chase Bank, 93 F.
Supp.3d 109, 115-17 (E.D.N.Y. 2015) (holding that the plaintiff-
mortgagors lacked standing to "challeng[e] their obligations
under the mortgage merely because that obligation was assigned,
even if wrongly").

The plaintiff argues that those cases are distinguishable
because the plaintiff is alleging (without any specificity) that
the assignments violated the Deed of Trust, the Promissory Note,
and California law. The plaintiff cites Springer, 2015 WL
9462083, at *6-9, where this Court dismissed a plaintiff-
mortgagor's claims for want of standing against a trustee for
the purported failure to comply with the prospectus governing
the trust that held the mortgage loan, but found that the
plaintiff-mortgagor had standing to pursue two claims for
declaratory relief that sought to adjudicate the status of the
defendants' property interest in the promissory note and deed of
trust underlying the mortgage loan. In Springer, 2015 WL
9462083, at *7, the plaintiff-mortgagor alleged that the
defendants had commenced a pending, nonjudicial foreclosure on
the plaintiff-mortgagor's property even though, as the
plaintiff-mortgagor claimed, the defendants had no legal
authority to do so under the deed of trust, the promissory note,
and Nevada law. The clear allegations of harm arising from a

17

pending foreclosure were sufficient to establish a justiciable controversy as to those two claims for declaratory judgment. See id. at *7-8. By contrast, missing in this case are any allegations of a pending foreclosure, or other harm that could be fairly traceable to the assignments. See, e.g., McCarty v. The Bank of N.Y. Mellon, No. 14 CIV. 6756 (AT), 2015 WL 5821405, at *3 (S.D.N.Y. Sept. 8, 2015), aff'd, No. 15-3184, 2016 WL 5341972 (2d Cir. Sept. 21, 2016) (summary order); Obal, 2015 WL 631404, at *5-6; Boco v. Argent Mortg. Co, LLC, No. 13-CV-1165 (DLI), 2014 WL 1312101, at *3 (E.D.N.Y. Mar. 31, 2014).

The plaintiff also cites the decision of the Supreme Court of California in Yvanova v. New Century Mortg. Corp., 365 P.3d 845 (Cal. 2016), but Yvanova is distinguishable on the same basis as Springer. As the Supreme Court of California in Yvanova explained,

> Our ruling in this case is a narrow one. We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment. We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed. Id. at 848.

The Supreme Court of California further specified that its holding was limited to wrongful foreclosure claims based on assignments of deeds of trusts that were "not merely voidable

18

but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale." Id. at 861. According to Yvanova, "A void contract is without legal effect," while "a voidable transaction, unlike a void one, is subject to ratification by the parties." Id. at 852.

The plaintiff does not allege that the Property is currently subject to a nonjudicial foreclosure, or that such foreclosure is imminent; instead, the plaintiff is attempting to preempt a hypothetical foreclosure, a situation which Yvanova expressly declined to address. Moreover, as the court reasoned in Watson v. Bank of Am., N.A., No. 16-cv-513 (GPC), 2016 WL 6581846, at *14-17 (S.D. Cal. Nov. 7, 2016), "[b]ased on a careful review of the Yvanova, post-Yvanova court of appeal cases and post-Yvanova district court cases, in order to establish standing to challenge an assignment in either a pre-foreclosure or post-foreclosure case, a plaintiff must assert harm that produces 'an invasion of his or her legally protected interest', prejudice or injury." Id. at *16; see also Lundy v. Selene Fin., LP, No. 15-CV-05676-JST, 2016 WL 1059423, at *1-2, *13-14 (N.D. Cal. Mar. 17, 2016) (concluding that a plaintiff-mortgagor had standing to pursue a wrongful foreclosure claim where the defendants had initiated pending foreclosure proceedings). Here, there is no assertion of harm.

19

Furthermore, the Amended Complaint includes no specific allegations that could lead to the conclusion that the assignments were void, as opposed to merely voidable. See Horton, 2016 WL 6781250, at *3-5 (finding that merely alleging that a promissory note and deed of trust were split in violation of "the Note, Deed of Trust, and/or California law" was insufficient to allege that a mortgage was unenforceable); Cox v. Nationstar Mortg. LLC, No. 15-CV-9901 (DLC), 2016 WL 3926467, at *3 (S.D.N.Y. July 18, 2016).

In addition, there would be no basis for the exercise of discretionary jurisdiction over the plaintiff's claim for declaratory relief that the assignments were void. In deciding whether to exercise jurisdiction pursuant to the DJA, courts consider a variety of factors, "including whether the declaratory relief would resolve the controversy, whether declaratory relief would serve a useful purpose in clarifying the legal relations between the parties, whether the party seeking declaratory relief was engaging in forum shopping, whether declaratory relief would create a conflict with another jurisdiction, and whether a more appropriate form of relief exists." Springer, 2015 WL 9462083, at *8 (citing Obal, 2015 WL 613404, at *6).

Each of these factors would weigh against the exercise of jurisdiction in this Court. Implicit in the conclusion that the

plaintiff lacks standing to pursue his claim for declaratory relief is that deciding the rightful owner of the Mortgage Loan in the abstract would not be useful for the parties. See Obal, 2015 WL 631404, at *6 ("[A] declaration that the Assignment is void will raise, not resolve, questions regarding who is then the proper owner and holder of the Note and Mortgage; what is to be done about payments received on the Note after the Assignment; and who has the authority to negotiate a loan modification or short sale with [the plaintiff-mortgagor]."). Despite being in default on the Mortgage Loan for nearly a decade, the plaintiff continues to remain in possession of the Property. See id.

Accordingly, the plaintiff's claim for declaratory relief is dismissed.

### B.

The plaintiff has brought claims for constructive fraud and slander of title. Both claims are predicated upon the theory that the assignments of the Promissory Note and Deed of Trust underlying the Mortgage Loan were void. See Am. Compl. at 12, 14-15.[10] As already explained, the plaintiff lacks standing to challenge the validity of the assignments. Therefore, these

---

[10] The paragraphs of the Amended Complaint with respect to the claims are misnumbered. As such, citations to those portions of the Amended Complaint refer to the page numbers of the ECF document.

claims, which are dependent upon theories that the plaintiff cannot establish for want of standing, must be dismissed. See Le Bouteiller, 2015 WL 5334269, at *9-10 (dismissing essentially identical claims on the same basis (citing Rajamin, 757 F.3d at 87-88)).

In any event, neither claim is sufficiently well-pleaded to survive a motion to dismiss. The parties dispute whether New York or California law applies --- including whether there is an actual conflict between the two --- but the application of the law of either state results in the same outcome of dismissal of the claims.[11]

The claim for constructive fraud fails to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead with "particularity the circumstances constituting fraud." The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments

---

[11] "As a general rule, a federal court sitting in diversity or with pendent jurisdiction over state law claims applies the choice of law rules of the state in which it sits." Horton, 2016 WL 6781250, at *3 (citation omitted).

of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (citation omitted)). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted); <u>see also</u> <u>Vess</u>, 317 F.3d at 1106 ("[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." (citation omitted)).

The plaintiff's generalized allegations of material misrepresentations, and actions taken by the defendants that "were malicious and done willfully in conscious disregard of the rights of the Plaintiff[]," Am. Compl. at 12-13, are entirely conclusory. The allegations do not come close to meeting the heightened pleading standard of Rule 9(b), and accordingly must be dismissed. <u>See</u> <u>Horton</u>, 2016 WL 6781250, at *5 (dismissing a similar fraud claim for want of particularity under California law); <u>Springer</u>, 2015 WL 9462083, at *10 (dismissing a similar fraud claim for want of particularity under New York law).

Second, the slander of title claim is unsupported by the allegations in the Amended Complaint. The slander of title claim

is predicated upon the "wrongful foreclosure" of the Property.[12]
Am. Compl. at 14-15. However, there is no allegation that the
Property has been subject to a foreclosure; indeed, as the
plaintiff has conceded, this is a pre-foreclosure case. Cf.
Abraham v. Am. Home Mortg. Servicing, Inc., 947 F. Supp. 2d 222,
236 (E.D.N.Y. 2013) (dismissing a similar slander of title claim
under New York law where the allegations in the pleadings
contradicted the plaintiff's theory underlying the slander of
title claim).

Moreover, none of the allegations in the Amended Complaint
could plausibly support a slander of title claim under either
New York or California law. Under New York law, "To state a
claim for slander of title under New York law, a plaintiff must
allege (1) a communication falsely casting doubt on the validity
of complainant's title, (2) reasonably calculated to cause harm,
and (3) resulting in special damages." Nials v. Bank of Am., No.
13 CIV. 5720 (AJN), 2014 WL 2465289, at *4 (S.D.N.Y. May 30,
2014) (quoting Abraham, 947 F. Supp. 2d at 236). "New York law
also requires that Plaintiff demonstrate that the statements are
made with 'malice' or 'at least a reckless disregard for their

---

[12] To the extent that the plaintiff was attempting to assert a
claim for wrongful foreclosure under California law against the
defendants, the allegations are insufficiently particularized to
give fair notice to the defendants of that claim pursuant to
Rule 8(a) of the Federal Rules of Civil Procedure. Even
construing the Amended Complaint liberally, it could not meet
the Rule 8(a) fair notice threshold.

truth or falsity.'" Id. (citations omitted). The plaintiff has failed to plead any allegations that could plausibly establish falsity or the intent element of a slander of title claim under New York law. See id.; Abraham, 947 F. Supp. 2d at 236.

Similarly, under California law, to state a claim for slander of title, a plaintiff must allege: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." Horton, 2016 WL 6781250, at *6 (citation omitted). "A privilege, either absolute or qualified, is a defense to a charge of slander of title." Id. (citation omitted). "[W]here the Complaint shows that the communication or publication is one within the classes of qualified privilege, it is necessary for the plaintiff to go further and plead and prove that the privilege is not available as a defense in the particular case, e.g., because of malice." Id. (citation omitted).

The plaintiff has failed to set forth any arguments that the alleged "publications" were not privileged. Furthermore, there are no particularized allegations that could lead to the conclusion that the publications were made with malice, or that they were false. See id. at *7 & n.11. Accordingly, the slander of title claim must be dismissed. See id. (dismissing a similar slander of title claim under California law).

25

C.

The plaintiff has brought two claims for damages for purported violations of the TILA in connection with the assignments of the Mortgage Loan. The first claim is for multiple, although unspecified, violations of the TILA, and the second, more particularized claim is for purported violations of 15 U.S.C. § 1641(g), which provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." The plaintiff has also brought a claim for rescission of the Mortgage Loan pursuant to 15 U.S.C. § 1635 of the TILA.

The defendants argue that the claims under the TILA are untimely. "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989); see also Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 434 (S.D.N.Y. 2014), aff'd, 579 Fed.Appx. 7 (2d Cir. 2014) (summary order).

(i)

The plaintiff's claims for damages under the TILA are time-barred. Under 15 U.S.C. § 1640(e), claims for damages pursuant

26

to the TILA must be brought within one year from the date of the occurrence of the violation. Springer, 2015 WL 9462083, at *11 (citing Feliciano v. U.S. Bank Nat. Ass'n, No. 13-CV-5555 KBF, 2014 WL 2945798, at *5 (S.D.N.Y. June 27, 2014)); see also Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) (collecting cases). The last alleged improper assignment occurred on March 7, 2012, and the plaintiff initiated this action on April 7, 2016, far outside the one-year statute of limitations.

The plaintiff argues that the statute of limitations should be equitably tolled because the defendants allegedly fraudulently concealed the TILA violations, and because the plaintiff purportedly required a forensic audit to determine the existence of some of the TILA violations. For claims under federal law, the federal doctrine of equitable tolling applies. See Feliciano, 2014 WL 2945798, at *6 (citing Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003)). "Equitable tolling is available in 'rare and exceptional circumstances,' where the court finds that 'extraordinary circumstances' prevented the party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he sought to toll.'" Grimes, 785 F. Supp. 2d at 286 (citations omitted). "[A] statute of limitations may be tolled due to the defendant's fraudulent

27

concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." Corcoran v. N.Y. Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) (citations and internal quotation marks omitted). "In cases involving TILA, 'the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself is* necessary to equitably toll the running of the statute of limitations[,]' . . . because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." Grimes, 785 F. Supp. 2d at 286 (citations omitted).

Equitable tolling is unavailable here. The plaintiff has pleaded no facts that could lead to the inference that the defendants wrongfully concealed any material facts above and beyond the alleged TILA violations themselves. See id. at 287; Williams v. Aries Fin., LLC, No. 09-CV-1816 (JG), 2009 WL 3851675, at *7 (E.D.N.Y. Nov. 18, 2009). There are no plausible allegations that any acts by the defendants prevented the plaintiff from accessing the courts to vindicate his rights. To the contrary, the plaintiff already brought claims years ago

based on the complained-of assignments against Chase and Fannie
Mae for violations of the TILA in the California Federal
Litigation, and another set of claims against Chase and Fannie
Mae involving the same assignments in the California State
Litigation. See Feliciano, 2014 WL 2945798, at *6 (rejecting
request for equitable tolling because, based on the filings in
another action, the plaintiff had been, or should have been, on
notice of the complained-of mortgage loan assignments years
prior to the filing of the action); Grimes, 785 F. Supp. 2d at
286-87. While the plaintiff alleges that the forensic audit
uncovered "newly discovered evidence" about the assignments, of
which the plaintiff was presumably unaware at the time he
initiated the prior litigations, see Am. Compl. ¶ 11, that is
not a persuasive justification for equitable tolling, especially
because the plaintiff knew enough to bring a federal action
three years ago against Chase and Fannie Mae for TILA violations
(including for purported violations of 15 U.S.C. § 1641(g)) in
connection with the same assignments. Accordingly, the
plaintiff's claims for damages pursuant to the TILA are time-
barred.

### (ii)

Pursuant to 15 U.S.C. § 1635(f), a borrower's right to
rescission "shall expire three years after the date of
consummation of the transaction or upon the sale of the

property, whichever occurs first." The Mortgage Loan was consummated in 2007, meaning that the plaintiff's right to seek rescission of the Mortgage Loan expired years prior to the initiation of this suit.

The plaintiff again argues for equitable tolling, and, were that an available remedy under 15 U.S.C. § 1635(f), it would be denied for the reasons already discussed. However, in Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998), the Supreme Court held, based on "Congress's manifest intent," that "the [TILA] permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run." Id. at 419 (emphasis added); see also Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790, 792 (2015). Based on the plain language of 15 U.S.C. § 1635(f), and the Supreme Court's interpretation of that language in Beach, "This three-year period is a statute of repose, rather than a statute of limitations, meaning that the right is extinguished after the three-year period passes and is not subject to equitable tolling." Reinhart v. Citimortgage, Inc., No. 15-CV-1095, 2016 WL 1259413, at *6 (N.D.N.Y. Mar. 30, 2016) (quoting Jacques v. Chase Bank USA, N.A., 2016 WL 423770, at *9 (D. Del. Feb. 3, 2016)), reconsideration denied, No. 15-CV-1095, 2016 WL 3176650 (N.D.N.Y. June 7, 2016); see also, e.g., Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 264 n.6 (3d Cir. 2013) (noting that equitable tolling is unavailable

30

under 15 U.S.C. § 1635(f) (citing Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1181 (10th Cir. 2012)); McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1329 (9th Cir. 2012) ("Because § 1635(f) is a statute of repose, it extinguished [the plaintiff's] right to rescission . . . three years after the consummation of the loan."); Jones v. Saxon Mortg., Inc., 537 F.3d 320, 326-27 (4th Cir. 1998) (per curiam) (same); see also CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2183 (2014) ("Statutes of limitations, but not statutes of repose, are subject to equitable tolling . . . ."); Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 106 (2d Cir. 2013) ("[A] statute of repose is subject [only] to legislatively created exceptions . . . and not to equitable tolling." (citations and internal quotation marks omitted)).

The plaintiff's right to rescission under the TILA has expired, and he cannot now seek to bring that claim.[13]

### D.

The plaintiff seeks specific performance of the settlement that Chase offered, but that he never accepted. The plaintiff did not respond to the defendants' arguments for dismissal of

---

[13] The Amended Complaint includes several oblique references to violations of the RESPA and the FDCPA, but does not detail which sections of these respective statutes have been violated, or include any specific causes of action related to those statutes. These allegations are too conclusory and nonspecific to state a claim for relief under those respective statutes. See Harriot, 2016 WL 6561407, at *5; see also Fed. R. Civ. P. 8(a).

that claim, which is properly deemed abandoned. See, e.g., Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., No. 15-CV-4244 (JGK), 2016 WL 4747281, at *18 (S.D.N.Y. Sept. 12, 2016), reconsideration denied, No. 15-CV-4244 (JGK), 2016 WL 6652733 (S.D.N.Y. Nov. 10, 2016).

In any event, under New York law, "For [the plaintiff] to justify [his] entitlement to [specific performance], [he] must first establish the existence of a contract with [the defendants]." Edge Grp. WAICCS LLC v. Sapir Grp. LLC, 705 F. Supp. 2d 304, 312 (S.D.N.Y. 2010); see also Illumina, Inc. v. Ariosa Diagnostics, Inc., No. CV 14-01921 (SI), 2014 WL 3897076, at *4 (N.D. Cal. Aug. 7, 2014) (same under California law). The plaintiff's allegations establish that he never agreed to the proposed settlement. Accordingly, there is no settlement agreement that the plaintiff can seek to enforce.

### E.

The defendant Rushmore argued in its papers that the plaintiff lacks standing, and that none of the plaintiff's allegations are directed against it, especially because Rushmore only became the loan servicer of the Mortgage Loan in 2016, while the events underlying the plaintiff's claims occurred years earlier. The plaintiff did not respond to Rushmore's arguments in his papers. Accordingly, the claims against Rushmore are properly deemed abandoned, and the claims against

Rushmore are dismissed on that ground as well. See, e.g.,
Springer, 2015 WL 9462083, at *12 (dismissing similar claims as
abandoned because the opposition to the motion to dismiss did
not address the arguments favoring dismissal); Obal, 2015 WL
631404, at *10 (same).

**IV.**

The plaintiff has requested leave to amend the Amended
Complaint, including to add claims against the defendants for
purported violations of the California Homebuyer Bill of Rights
(the "HBOR"). Rule 15(a) provides that leave to file an amended
complaint should be granted "freely . . . when justice so
requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis,
371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to
amend 'shall be freely given when justice so requires'; this
mandate is to be heeded." (citation omitted)). The claims for
money damages for violations of the TILA, rescission under the
TILA, and specific performance are **dismissed with prejudice**
because further amendment would be futile. With respect to these
claims, the plaintiff cannot cure the timeliness and other
pleading defects in the Amended Complaint.

The declaratory relief, constructive fraud, and slander of
title claims are **dismissed without prejudice.** The plaintiff
should be given leave to replead these claims consistent with
this opinion. The plaintiff retained counsel after filing the

33

Amended Complaint, and his opposition to the motions to dismiss, as a *pro se* litigant. The plaintiff has only amended the complaint once. Moreover, the defendants have not addressed the viability of the plaintiff's proposed HBOR claim. While there are plainly potential threshold issues to bringing such a claim, it cannot be said at this point that those issues are insurmountable. Now that the plaintiff is represented in this action, the plaintiff should be given the opportunity to amend the Amended Complaint consistent with this opinion to assert against the defendants any potentially meritorious claim, so long as the claim has a good faith basis in fact and in law. See Smith v. Soros, No. 02-Cv-4229 (JGK), 2003 WL 22097990, at *8 (S.D.N.Y. Sept. 5, 2003) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)), aff'd, 111 F. App'x 73 (2d Cir. 2004) (summary order).

In their papers, the defendants intimated that if the plaintiff's claims were not dismissed with prejudice, this action should be transferred to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404. In the event that that the plaintiff decides to file a second amended complaint, the defendants may renew the application, or the plaintiff may bring the application himself.

The parties should also be advised that the action may be transferred by the Court of its own accord "[f]or the

convenience of parties and witnesses, [and] in the interest of justice . . . ." 28 U.S.C. § 1404(a); see also Mobil Corp. v. S.E.C., 550 F. Supp. 67, 69 (S.D.N.Y. 1982). The plaintiff is a California resident, the Property is located in California, all relevant events occurred in California, and the pleadings raise issues of California law. The parties will be given notice and an opportunity to be heard prior to any transfer.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motions to dismiss are **granted.** The claims for money damages for violations of the TILA, rescission under the TILA, and specific performance are **dismissed with prejudice.** The claims for declaratory relief, constructive fraud, and slander of title are **dismissed without prejudice**. The plaintiff may file a second amended complaint by February 3, 2017. If the plaintiff fails to file a second amended complaint by that date, the action will be dismissed with prejudice. The Clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
          **January 11, 2017**          _____/s/_____
                              **John G. Koeltl**
                      **United States District Judge**